# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

## GREEN BAY DIVISION

| | |
|---|---|
| Menominee Indian Tribe of Wisconsin, | **Civil Action No.: _____** |
| Plaintiff, | |
| v. | |
| Drug Enforcement Administration | **COMPLAINT FOR DECLARATORY JUGDMENT** |
| and | |
| United States Department of Justice, | |
| Defendants. | |

Plaintiff Menominee Indian Tribe of Wisconsin ("the Tribe"), by and through its counsel, states and alleges as follows:

## Introduction

1.      This action arises from the Tribe's attempt to cultivate industrial hemp on the Menominee Indian Reservation under Tribal law and the Agricultural Act of 2014 ("the Farm Bill"). The Tribe's cultivation of industrial hemp on the Menominee Indian Reservation for agricultural and/or academic research purpose in conjunction with College of

Menominee Nation complies with the Farm Bill's language that allows the cultivation of industrial hemp.

2.      The Drug Enforcement Administration ("DEA") and the Department of Justice ("DOJ") disagree with the Tribe as to the ability of the Tribe to cultivate industrial hemp in accordance with the Farm Bill. In fact, on October 23, 2015, federal agents and their state counterparts entered the Menominee Reservation, the sovereign lands of the Menominee Indian Tribe of Wisconsin, and destroyed the Tribe's industrial hemp crop. These actions by the DEA and DOJ highlight the different positions taken by the Tribe and the federal agencies regarding the Tribe's right to cultivate industrial hemp under the Farm Bill.

3.      The Tribe seeks a declaration from this Court that its cultivation of industrial hemp for agricultural or academic research purpose in conjunction with College of the Menominee Nation is lawful under the Farm Bill's language that allows for such cultivation of industrial hemp.  Specifically, the Tribe asks the Court to find: (a) in legalizing the cultivation of industrial hemp on the Menominee Reservation, the Tribe acted as a "State" for purpose of § 7606 of the Farm Bill (7 U.S.C. § 5940); (b) the cannabis laws of the State of Wisconsin have no application to industrial hemp cultivation by the Tribe within the exterior boundaries of the Menominee Reservation and, therefore, cultivation of industrial hemp on the Menominee Reservation is allowed under the laws of the State of Wisconsin for purposes of § 7606 of the Farm Bill (7 U.S.C. § 5940), and/or (c) the College of Menominee Nation is an "institution of higher education" under § 7606 of the Farm Bill (7 U.S.C. § 5940).

## Jurisdiction and Venue

4.     The Tribe seeks a declaratory judgment concerning the application of federal laws, specifically, the Controlled Substances Act and the 2014 Farm Bill, to the Tribe. This action arises under the laws of the United States, and this Court has jurisdiction pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1346 because this action involves claims against agencies of the United States government. This Court is authorized to grant declaratory relief by the Declaratory Judgment Act, 28 U.S.C. §§ 2201-02.

5.     Venue in this District is proper under 28 U.S.C. § 1391(e) because a substantial part of the events giving rise to the claim occurred in this judicial district.

## Parties

6.     The Menominee Indian Tribe of Wisconsin is a federally recognized American Indian tribe. The Menominee Indian Reservation is located in Menominee County, Wisconsin. The Tribe operates a farm within the boundaries of the reservation, and the Tribe cultivates industrial hemp on this farm land for research purposes in conjunction with the College of the Menominee Nation.

7.     Defendant DEA is the agency designated by the Attorney General of the United States to interpret, implement, enforce, and carry out the Attorney General's responsibilities with respect to, the federal Controlled Substances Act, 21 U.S.C. §§ 801 *et seq.* ("CSA").

8.     Defendant DOJ is the agency of the United States' executive branch that enforces the CSA. The United States Department of Justice,

3

Office of the Attorney General, is located at 950 Pennsylvania Avenue, NW, Washington, DC 20530-0001.

## Factual Allegations

**A.     Industrial Hemp**

9.      Hemp is one of the earliest-known domesticated plants, with a long history of cultivation and use around the world. In the United States, hemp farming predates European settlement and it was cultivated by many Native American tribes.

10.     Though grown from the same *Cannabis sativa L.* plant as marijuana, industrial hemp plants contain a delta-9 tetrahydrocannabinol concentration of less than 1% or less by weight, rendering them incapable of producing the psychoactive effects of marijuana.

11.     Instead, industrial hemp—which can be grown as a fiber and a seed crop—is used to produce a range of textiles, foods, papers, body care products, detergents, plastics, and building materials that  are available throughout North America, the European Union, and Asia. Industrial hemp is currently cultivated by farmers in more than 30 countries around the world—from Australia to Canada to China.

12.     Under the CSA, illegal marijuana does not include hemp fiber, seed, or oil. Indeed, the CSA's definition of "Marihuana" specifically excludes "the mature stalks of such [cannabis] plant, any other compound, manufacture, salt, derivative, mixture or preparation of such mature stalks (except the resin extracted therefrom), fiber, oil or cake, or the sterilized seed of such plant . . . ."

13.     Under this exemption, the CSA has declared the stalk, fiber, non-viable seed, and oil, and products of any related to industrial hemp legal while at the same time deeming the growth of the plant that produces such products illegal and banning such activity.

14.     This exemption has allowed Americans to legally import, purchase, use, and trade in sterilized hemp seeds, oil, stalk, and fiber, and products made from those exempt parts of the plant. Companies trading in such products in the United States generally either import hemp fiber, seed, and oil from outside the country for use in manufacturing these products or import already-finished products from Canada or Europe.

15.     The United States market for industrial hemp stalk and fiber—though less developed than that in other parts of the world due to past CSA restrictions—is substantial and would provide U.S. industrial hemp farmers access to business opportunities currently enjoyed by their global counterparts in industries such as plastics and composites, automotive, furniture, building, paper and textile industries.

**B.     The Cole and Wilkinson Memoranda**

16.     In August 2013, following state ballot initiatives in Colorado and Washington that legalized the possession of small amounts of marijuana and provided for the regulation of marijuana production, processing, and sale under state law, then-Deputy United States Attorney General James Cole issued a memorandum to all United States Attorneys offering "Guidance Regarding Marijuana Enforcement" (the "Cole

Memorandum").[1] The document acknowledged the Department of Justice's commitment to enforcing the CSA but recognized its concurrent commitment "to using its limited investigative and prosecutorial resources to address the most significant threats in the most effective, consistent, and rational way."[2]

17.     The Cole Memorandum goes on to set forth eight enforcement priorities of "particular" importance to the federal government that will "continue to guide the Department's enforcement of the CSA against marijuana-related conduct":

- Preventing the distribution of marijuana to minors;

- Preventing revenue from the sale of marijuana from going to criminal enterprises, gangs, and cartels;

- Preventing the diversion of marijuana from states where it is legal under state law in some form to other states;

- Preventing state-authorized marijuana activity from being used as a cover or pretext for the trafficking of other illegal drugs or other illegal activity;

- Preventing violence and the use of firearms in the cultivation and distribution of marijuana;

_____

[1] Memorandum from James M. Cole, Deputy Attorney Gen., to all United States Attorneys providing "Guidance Regarding Marijuana Enforcement" (Aug. 29, 2013).

[2] *Id.* at 1.

- Preventing drugged driving and the exacerbation of other adverse public health consequences associated with marijuana use;

- Preventing the growing of marijuana on public lands and the attendant public safety and environmental dangers posed by marijuana production on public lands; and

- Preventing marijuana possession or use on federal property.[3]

18.     In October of 2014, DOJ implemented a "Policy Statement Regarding Marijuana Issues in Indian Country" ("Wilkinson Policy Statement") which explicitly made the eight Cole Memo enforcement priorities applicable to United States Attorneys' marijuana enforcement efforts in Indian Country.[4]

## C.     The Agricultural Act of 2014

19.     The Farm Bill set in motion a path to curing the CSA's contradictory treatment of industrial hemp in § 7606, entitled "Legitimacy of Industrial Hemp Research."[5]

20.     The Farm Bill defines industrial hemp as "the plant *Cannabis sativa L.* and any part of such plant, whether growing or not, with a delta-

---

[3] *Id.* at 2–3.

[4] Memorandum from Monty Wilkinson, Direct, Exec. Office for United States Attorneys, to all United States Attorneys, First Assistant United States Attorneys, Criminal Chiefs, Appellate Chiefs, OCDETF Coordinators, & Tribal Liaisons providing "Policy Statement Regarding Marijuana Issues in Indian Country" (Oct. 28, 2014).

[5] Pub. L. No. 113-79, § 7606, 128 Stat. 649, 912-13 (2014).

9 tetrahydrocannabinol concentration of not more that 0.3 percent on a dry weight basis." [6]

21.     By distinguishing industrial hemp from other forms of Cannabis sativa L. with greater tetrahydrocannabinol ("THC") concentrations, Congress rightly decoupled industrial hemp from marijuana and corrected the CSA's confusing treatment of hemp.

22.     Ultimately enacted as 7 U.S.C. § 5940 and signed into law on February 7, 2014, this section of the Farm Bill legalizes industrial hemp growth or cultivation under certain circumstances.

23.     Specifically, § 7606 provides:

"Notwithstanding the Controlled Substances Act (21 U.S.C. 801 et seq.) . . . or any other Federal law, an institution of higher education (as defined in section 101 of the Higher Education Act of 1965 (20 U.S.C. 1001)) or a State department of agriculture may grow or cultivate industrial hemp if—

> (1) the industrial hemp is grown or cultivated for purposes of research conducted under an agricultural pilot program or other agricultural or academic research; and

> (2) the growing or cultivating of industrial hemp is allowed under the laws of the State in which such institution of higher education or State department of agriculture is located and such research occurs.[7]"

[6] Agricultural Act of 2014, H.R. 2642; Pub. L. 113–79 (2014).

[7] *Id.*

24.     This provision of the Farm Bill enables the Tribe, acting in conjunction with the College of the Menominee Nation, to lawfully grow industrial hemp for agricultural and/or academic research on the Menominee Reservation.

25.     Section 7606 does not define "State," but the full text of the legislation in which it was included does, defining "State" as "(A) a State; (B) the District of Columbia; (C) the Commonwealth of Puerto Rico; and (D) any other territory or possession of the United States."[8]

26.     Other agricultural provisions of the U.S. Code also define "State" to include "any other territory or possession of the United States."[9]

27.     When the term "State" is defined to include any territory or possession of the United States, Tribal land is included.

28.     Federal Indian law supports treating tribes the same as states under the Farm Bill.

29.     Tribal sovereignty extends to the regulation of industrial hemp, particularly because it directly impacts the tribe's own conduct on its own land.

30.     Further, Section 7606 applies to all "institutions of higher education," as defined by Section 101 of the Higher Education Act of 1965.[10]

---

[8] 7 U.S.C. § 9011 (20) (2015).

[9] *See* 7 U.S.C. § 2132(d) (2014); 7 U.S.C. § 7202(14); 7 U.S.C. § 8751(8).

[10] *Id.* at § 7607(a).

31.     The Higher Education Act provides a lengthy definition of what qualifies as an "institution of higher education," divided into two general categories.[11] The first describes traditional colleges and universities, which must meet the following criteria:

- The school requires that students have a high school diploma or GED to be admitted;[12]

- The school is authorized by the state to provide higher education;

- The school awards a bachelor's degree, or provides a two-year program that would be accepted as full credit towards a bachelor's degree;

- The school is public or nonprofit; and

- The school is accredited by a nationally recognized accrediting agency or association, or has been granted pre-accreditation from such an agency.[13]

32.     The second category describes post-secondary vocational programs.[14] These programs must meet all of the above criteria, except that they may offer a one year "program of training to prepare students for gainful employment in a recognized occupation" rather than credit towards a bachelor's degree.[15]

33.     Any educational entity satisfying the criteria set forth in either of these categories qualifies as an "institution of higher education," as defined by the Farm Bill.

---

[11] Higher Education Act of 1965, 20 U.S.C. 1001, § 101.

[12] The Act offers an exception to this requirement for colleges that accept high school students on a dual-enrollment basis. *Id.*

[13] *Id.*

[14] *Id.*

[15] *Id.*

Case 1:15-cv-01378-WCG   Filed 11/18/15   Page 10 of 24   Document 1

34.     The College of Menominee Nation is such an institution of higher education that satisfies the requirements of Farm Bill § 7606.

**D.     Industrial Hemp Programs in States**

35.     The Farm Bill has allowed farmers in states such as Kentucky and Colorado to work with institutions of higher learning or state departments of agriculture to grow and cultivate industrial hemp.

36.     Colorado, for example, legalized industrial hemp under legislation passed in 2013 that directed Colorado's Department of Agriculture to establish registration and inspection regulations, which it did under industrial hemp program in early 2014.[16]

37.     Colorado's program requires registration, and it can authorize growers to cultivate industrial hemp for either commercial or research and development purposes.[17]

38.     Kentucky also started an industrial hemp pilot program in 2014, after legalizing industrial hemp research in 2013. Kentucky's program allows individuals and state universities to partner with the State's Department of Agriculture to cultivate industrial hemp for research purposes.[18]

---

[16] Industrial Hemp, Colorado Dep't of Agric., https://www.colorado.gov/pacific/agplants/industrial-hemp.

[17] Colo. Rev. Stat. § 35-61-102(1) (2015).

[18] Industrial Hemp Program, Kentucky Dep't of Agric., http://www.kyagr.com/ marketing/hemp-pilot.html; Press Release, Kentucky Dep't. of Agric., Kentucky closer to getting hemp seeds; commission adopts rules for hemp programs (May 20, 2014) *available at* http://www.kyagr.com/Kentucky-AGNEWS/press-releases/Kentucky-closer-to-getting-hemp-seeds.html.

39.     Kentucky's program has already been successful, yielding "tremendous amount[s] of data about production methods, seed varieties, harvesting and processing techniques, and uses for harvested hemp" in its first year, and the number of acres planted from 2014 to 2015 increased greatly, from 30 acres to 922 acres.[19]

40.     The laws of the State of Wisconsin that prohibit cannabis do not apply within the exterior boundaries of the Menominee Indian Reservation.

E.     History of the Menominee Indian Tribe of Wisconsin

41.     The Menominee Indian Tribe of Wisconsin is a federally recognized Indian Tribe.

42.     The Tribe was granted a reservation in Wisconsin by the Treaty of Wolf River in 1854. 10 Stat. 1064 (1854). In this treaty the Menominee retroceded certain lands they had acquired under an earlier

---

[19] Press Release, Kentucky Dep't. of Agric., State ag department is taking applications for 2015 industrial hemp pilot projects (Dec. 1, 2014), *available at* http://www.kyagr.com/kentucky-agnews/press-releases/state-ag-department-is-taking-applications-for-2015-industrial-hemp-pilot-projects.html; Press Release, Kentucky Dep't. of Agric., 2016 industrial hemp project applications sought (Oct. 9, 2015), *available at* http://www.kyagr.com/Kentucky-AGNEWS/press-releases/2016-industrial-hemp-project-applications-sought.html; *see also* Kentucky Dep't of Agric., The Kentucky Department of Agriculture Industrial Hemp Pilot Projects—2014 Summary, *available at* http://www.kyagr.com/marketing/documents/HEMP_2014.Summary.pdf (summarizing some of the data yielded from the 2014 program).

12

treaty in 1849.[20] The United States granted to the tribe a tract of land along the Wolf River "for a home, to be held as Indian lands are held."[21]

43.       In August 1953, the United States Congress enacted Public Law 280, 67 Stat. 588 (1953), which, as amended, became the present 18 U.S.C. sec. 1162 (1976). Public Law 280 gave certain states, including Wisconsin, jurisdiction over crimes committed by or against Indians in Indian country within each state. However, this law excluded the Menominee Indian Reservation from the grant of jurisdiction to Wisconsin.

44.       On June 17, 1954, Congress enacted the Menominee Termination Act, Pub. L. No. 399, 68 Stat. 250 (1954).[22] The purpose of the Termination Act was "to provide for orderly termination of Federal supervision over the property and members of the Menominee Indian Tribe of Wisconsin."[23]

45.       Additionally, on August 24, 1954, Congress, amended 18 U.S.C. § 1162 (1976) to strike the Menominee exception, thereby subjecting the Menominee Indian Reservation to the state's criminal jurisdiction as provided by 18 U.S.C. § 1162(a). As a result of these legislative and executive actions, the Tribe became subject to the state's criminal and civil jurisdiction, and the area known as the Menominee

---

[20] 9 Stat. 952 (1849).

[21] *Id.* at 1065.

[22] Codified at 25 U.S.C. §§ 891-902 (repealed).

[23] 68 Stat. at 250.

Indian Reservation became Menominee County, Wisconsin's 72nd County.

46.    On December 22, 1973, Congress repealed the Termination Act by enacting the Menominee Restoration Act, Pub. L. No. 93-197, 87 Stat. 770 (1973). This legislation restored federal recognition status for the Tribe and returned tribal property to federal trusteeship.

47.    Effective March 1, 1976, the State of Wisconsin retroceded state jurisdiction over the Menominee Indian Reservation by executive proclamation. Today, the boundaries of Menominee County are generally coterminous with the boundaries of the present day Menominee Indian Reservation.

48.    Because the Tribe is not subject to Public Law 280, the Menominee Indian Reservation is not subject to the jurisdiction or laws of the state of Wisconsin, including those that prohibit cannabis.

49.    As Tribal land, however, the Menominee Indian Reservation is included in the Farm Bill's definition of "State."

**F.    The Tribe's Legalization of Industrial Hemp**

50.    The 1973 Menominee Restoration Act provided for the election of a Menominee Restoration Committee, who was tasked with the responsibility of drafting the Menominee Tribal Constitution for adoption by tribal membership and approval by the United States of America. The Constitution and Bylaws of the Menominee Indian Tribe of Wisconsin was ratified on November 12, 1977.

51.    The Constitution and Bylaws of the Menominee Indian Tribe of Wisconsin give the Tribe the power to act through its duly elected

14

governing body, the Menominee Tribal Legislature, and gives the Menominee Tribal Legislature the authority to make and enforce laws and govern itself under the laws and customs of the Tribe.

52.     Menominee County is the poorest county in Wisconsin and the lowest-ranked county in Wisconsin in regard to health outcomes.

53.     The United States Department of the Interior has recognized that the Tribe has unmet needs that include underfunded tribal government functions and programs, healthcare, community safety, and economic development.

54.     The Tribe is constantly seeking means of economic development in order to help pull its community out of poverty and provide needed health, education, and welfare services to its members.

55.     When DOJ issued the Cole and Wilkinson Memoranda, the Tribe—aware of the successful history of hemp growth in Wisconsin—determined that the cultivation of hemp could be a viable economic development opportunity worthy of research by the College. Further the Tribe determined that because industrial hemp contains THC levels below 0.3 percent and has no psychoactive effect, cultivation of industrial hemp would be in compliance with the Cole and Wilkinson Memoranda guidelines.

56.     Thus, in early 2015, the Tribal Legislature passed Tribal Ordinance 15-06, creating Chapter 307 that legalized the growing of low THC non-psychotropic industrial hemp by Tribal licensees on the Menominee Reservation. The chairman of the Tribe signed the Ordinance into law in May 2015, and the Tribe provided notice of this change in

15

Tribal law to the United States Attorney Office for the Eastern District of Wisconsin with the intent of complying with the relevant provisions of the Farm Bill.

57.     The ordinance also amended Chapter 306 on Drugs and Drug Paraphernalia to clarify that "possession, growing, extraction, formulation, testing, manufacture and sale of Industrial Hemp" is not a violation of the Chapter and that industrial hemp "excluded from the categories of controlled substances." § 306-4.

58.     Chapter 307 defines industrial hemp as "all parts and varieties of the genera *Cannabis*, cultivated or possessed by a grower, whether growing or not, that contain a tetrahydrocannabinol concentration of 0.3 percent or less by weight." § 307-4(D).

59.     The ordinance creates a licensing procedure, and all license applicants must demonstrate that they are "capable of growing industrial hemp and ha[ve] adopted methods to ensure its safe production." § 307-6 (A)–(C).

60.     Only seeds likely to possess no more than 0.3 percent THC are approved for use under the ordinance, and licensed industrial hemp growers must submit to annual plant testing to ensure the plants contain 0.3 percent THC or less. §§ 307-8, 307-9(A).

61.     No industrial hemp products can be sold until the Menominee Tribal Department of Licenses and Permits approves them for sale, and all industrial hemp products must be tested for quality and include the percentage of THC the product contains. § 307-9(D).

62.     It is a violation of the ordinance to sell any industrial hemp plant or product that will be produced for human consumption or absorption to any person under the age of eighteen. § 307-12(B).

63.     The ordinance's provisions are enforced by the Menominee Tribal Department of Licenses and Permits. § 307-5.

## G.     The History of the College of Menominee Nation

64.     In September 1992, the Menominee Tribal Legislature began efforts to establish a college for the Menominee people and their neighbors pursuant to an initiative proposed by tribal membership. In March 1993, the Menominee Tribal Legislature adopted an ordinance, which officially chartered the College of Menominee Nation (the "College"), making it the second tribal college in Wisconsin.

65.     Congress authorized the College in 1996, as one of only three land grant colleges in Wisconsin, and it is also authorized by the State of Wisconsin to provide higher education. The College is also accredited by the Higher Learning Commission, and the associate degree nursing program offered at the College is accredited by the Accreditation Commission for Education in Nursing (ACEN).

66.     The purpose of the College is "to provide quality higher education to the Menominee people such that each student enrolled at the College may pursue his or her individual goals and may advance the interests of the Menominee Nation on its reservation and in the surrounding community."[24]

---

[24] CODE OF THE MENOMINEE INDIAN TRIBE OF WISCONSIN ch. 637, "College of Menominee Nation," §637-2.

67.      Located on the Menominee Indian Reservation, the College's main campus in Keshena, Wisconsin, provides a small-school environment in a rural reservation setting. With a satellite campus in Green Bay, the private, nonprofit institution serves tribal members residing on and off the reservation alike, as well as a significant number of Native students from other tribes and non-Native people.

68.      The College requires either a GED or a high school diploma to enroll, with the exception of high school students enrolled on a dual-enrollment basis, and it offers programs for four-year bachelor's degrees, two-year associate's degrees in arts, science, and applied science, certificate, and diploma programs in more than sixteen areas of study.

69.      For these reasons, the College is an institution of higher education as defined by the Higher Education Act of 1965 and, by incorporation, the Farm Bill.

## H.      The Tribe's 2015 Industrial Hemp Program

70.      Following the enactment of the Farm Bill's industrial hemp research provisions, the Tribe was interested in researching the potential economic benefits of industrial hemp cultivation, and the College was interested in agricultural and academic research regarding industrial hemp cultivation.

71.      Accordingly, the Tribe entered into an agreement with the College to research the viability of industrial hemp on the Menominee reservation and codified the terms of their agreement in a Memorandum of Agreement, signed by the Tribe's Chairman and the College's President.

72.     The Menominee Indian Tribe of Wisconsin issued an industrial hemp license under the Tribe's industrial hemp ordinance.

73.     The Tribe planted an industrial hemp crop on Tribal lands for research purposes.

74.     The Tribe cooperated with the DEA and DOJ to secure testing of the industrial hemp to ensure that THC levels did not exceed 0.3%, including agreeing to destroy any industrial hemp that tested above this limit as such hemp would be in violation of the Tribal law.

## I.     The Raid by Federal Agents

75.     On Friday, October 23, 2015, federal agents entered the Menominee Reservation and seized and destroyed the Tribe's industrial hemp crop.  There was no known THC test exceeding 0.3%.

## COUNT I: Declaratory Judgment

## In legalizing the cultivation of industrial hemp on the Menominee Reservation, the Tribe acted as a "State."

76.     The allegations of paragraphs 1 through 75 are re-alleged and incorporated by reference as if fully set forth herein.

77.     The Tribe has complied with the Farm Bill in cultivating industrial hemp for agricultural and/or academic research purposes in collaboration with an institution of higher education as cultivation if industrial hemp in this way for this purpose in allowed by Tribal law.

78.     Because of the exceptions to the CSA carved out in the Farm Bill, the CSA cannot be interpreted to prohibit the Tribe's cultivation of

19

industrial hemp, which the Tribe has legalized on its Reservation, as required by the Farm Bill.

79.     The Tribe faces the prospect of additional infringements and violations of its sovereignty through raids by federal agents to seize and destroy any future industrial hemp crops.

80.     The Tribe has suffered and will continue to suffer irreparable harm due to the DEA and DOJ actions and practices averred to in this Complaint.

81.     There is a substantial controversy between DEA and DOJ and the Tribe of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

82.     Inasmuch as the Tribe faces the prospect of additional raids by federal agents to seize and destroy future industrial hemp crops, the Tribe has no adequate remedy at law with respect to the enforcement of the CSA.

83.     For these reasons, the Tribe is entitled to a declaratory judgment that in, legalizing the cultivation of industrial hemp on the Menominee Reservation, the Tribe acted as a "State" for purpose of § 7606 of the Farm Bill (7 U.S.C. § 5940) and that all of the above-described actions, conduct, and threats of DEA and DOJ to the contrary are and will be unlawful and to such additional declaratory relief as described in the Tribe's Prayer for Relief.

## COUNT II: Declaratory Judgment

### The cannabis laws of the State of Wisconsin have no application to industrial hemp cultivation by the Tribe within the exterior boundaries of the Menominee Reservation.

84.     The allegations of paragraphs 1 through 83 are re-alleged and incorporated by reference as if fully set forth herein.

85.     The cannabis laws of the State of Wisconsin have no application with in the exterior boundaries of the Menominee Reservation.

86.     Because of the exceptions to the CSA carved out in the Farm Bill, the CSA cannot be interpreted to prohibit the Tribe's cultivation of industrial hemp, which the State of Wisconsin cannot make illegal on the Menominee Reservation and which the Tribe has legalized on the Menominee Reservation, as required by the Farm Bill.

87.     The Tribe faces the prospect of additional infringements and violations of its sovereignty through raids by federal agents to seize and destroy any future industrial hemp crops.

88.     The Tribe has suffered and will continue to suffer irreparable harm due to the DEA and DOJ actions and practices averred to in this Complaint.

89.     There is a substantial controversy between DEA and DOJ and the Tribe of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

90.     Inasmuch as the Tribe faces the prospect of additional raids by federal agents to seize and destroy future industrial hemp crops, the

Tribe has no adequate remedy at law with respect to the enforcement of the CSA.

91.     For these reasons, the Tribe is entitled to a declaratory judgment that the cannabis laws of the State of Wisconsin have no application to industrial hemp cultivation by the Tribe within the exterior boundaries of the Menominee Reservation and, therefore, cultivation of industrial hemp on the Menominee Reservation is allowed under the laws of the State of Wisconsin for purposes of § 7606 of the Farm Bill (7 U.S.C. § 5940) and that all of the above-described actions, conduct, and threats of DEA and DOJ to the contrary are and will be unlawful and to such additional declaratory relief as described in the Tribe's Prayer for Relief.

## COUNT III: Declaratory Judgment

### The College of the Menominee Nation is an Institution of Higher Education.

92.     The allegations of paragraphs 1 through 91 are re-alleged and incorporated by reference as if fully set forth herein.

93.     The College is an institution of higher education, as defined by the Higher Education Act of 1965, incorporated by definition in the Farm Bill.

94.     The Tribe faces the prospect of additional infringements and violations of its sovereignty through raids by federal agents to seize and destroy any future industrial hemp crops.

95.    The Tribe has suffered and will continue to suffer irreparable harm due to the DEA and DOJ actions and practices averred to in this Complaint.

96.    There is a substantial controversy between DEA and DOJ and the Tribe of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

97.    Inasmuch as the Tribe faces the prospect of additional raids by federal agents to seize and destroy future industrial hemp crops, the Tribe has no adequate remedy at law with respect to the enforcement of the CSA.

98.    For these reasons, the Tribe is entitled to a declaratory judgment that the College of Menominee Nation is an "institution of higher education" under § 7606 of the Farm Bill (7 U.S.C. § 5940) and that all of the above-described actions, conduct, and threats of DEA and DOJ to the contrary are and will be unlawful and to such additional declaratory relief as described in the Tribe's Prayer for Relief.

## Relief Requested

The Tribe respectfully requests the following relief:

A.    Issuance of an order and judgment declaring that, in legalizing the cultivation of industrial hemp on the Menominee Reservation, the Tribe acted as a "State" for purpose of § 7606 of the Farm Bill (7 U.S.C. § 5940;

B.    Issuance of an order and judgment declaring that the cannabis laws of the State of Wisconsin have no application to industrial hemp cultivation by the Tribe within the exterior boundaries of

23

the Menominee Reservation and, therefore, cultivation of industrial hemp on the Menominee Reservation is allowed under the laws of the State of Wisconsin for purposes of § 7606 of the Farm Bill (7 U.S.C. § 5940);

C.      Issuance of an order and judgment declaring that the College of Menominee Nation is an "institution of higher education" under § 7606 of the Farm Bill (7 U.S.C. § 5940);

D.      Costs and attorneys' fees as authorized by law; and

E.      Such other and further relief as the Court deems just and equitable.


November 18, 2015                    **ROBINS KAPLAN LLP**


By: */s/ Richard B. Allyn*
    Richard B. Allyn (Wisc. #1013318)
    Timothy Q. Purdon*
    Brendan V. Johnson*
    Michael D. Reif*

800 LaSalle Avenue, Suite 2800
Minneapolis, MN  55402

T: 612 349 8500
F: 612 339 4181

*Attorneys for Plaintiff Menominee Indian Tribe of Wisconsin*

*\*Admission applications forthcoming*