UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

MENOMINEE INDIAN TRIBE OF WISCONSIN,

    Plaintiff,

v.      Case No. 15-CV-1378

DRUG ENFORCEMENT ADMINISTRATION and
UNITED STATES DEPARTMENT OF JUSTICE,

    Defendants.

## DECISION AND ORDER

The Menominee Indian Tribe of Wisconsin filed this declaratory action against the United States Department of Justice and its Drug Enforcement Administration (hereinafter "the Government") after federal agents raided reservation lands and seized a crop of hemp grown pursuant to a 2015 tribal ordinance legalizing the cultivation of hemp. The Tribe seeks a judgment declaring that its cultivation of industrial hemp for agricultural or academic research purposes in connection with the College of Menominee Nation is lawful under a 2014 federal law, 7 U.S.C. § 5940, which created an exemption to the Controlled Substances Act for the cultivation of hemp in certain circumstances.

Before the Court are the Government's motion to dismiss and the Tribe's motion for summary judgment. For the reasons below, the Government's motion will be granted and the Tribe's motion will be denied.

## BACKGROUND

Section 7606 of the Agricultural Act of 2014, entitled "Legitimacy of industrial hemp research," created the following provision:

> Notwithstanding the Controlled Substances Act (21 U.S.C. 801 et seq.), the Safe and Drug-Free Schools and Communities Act (20 U.S.C. 7101 et seq.), chapter 81 of Title 41, or any other Federal law, an institution of higher education (as defined in section 1001 of Title 20) or a State department of agriculture may grow or cultivate industrial hemp if--
>
> > (1) the industrial hemp is grown or cultivated for purposes of research conducted under an agricultural pilot program or other agricultural or academic research; and
> >
> > (2) the growing or cultivating of industrial hemp is allowed under the laws of the State in which such institution of higher education or State department of agriculture is located and such research occurs.

Pub. L. No. 113-79, § 7606, 128 Stat. 649, 912–13, codified at 7 U.S.C. § 5940(a). The law defines "industrial hemp" as "the plant Cannabis sativa L. and any part of such plant, whether growing or not, with a delta-9 tetrahydrocannabinol [THC] concentration of not more than 0.3 percent on a dry weight basis." 7 U.S.C. § 5940(b)(2). The Controlled Substances Act defines marijuana, a Schedule I controlled substance, as all parts of the Cannabis sativa L. plant regardless of THC content, but excludes the mature stalks of such plant, fiber produced from such stalks, oil or cake made from the seeds of such plant, other compounds made of such mature stalks, fiber, oil, or cake, or the sterilized seed of such plant which is incapable of germination. 21 U.S.C. § 802(16). Thus, before the 2014 statute above was enacted, "hemp" products made from the stalk, fiber, non-viable seed, and oil were legal to import into the United States but illegal to grow. *See Monson v. Drug Enforcement Admin.*, 589 F.3d 952, 962 (8th Cir. 2009).

2

In May 2015, the Menominee Indian Tribe of Wisconsin, a federally-recognized Indian tribe, passed a tribal ordinance legalizing the cultivation of industrial hemp on the Menominee Reservation by licensees of the Tribe. Hemp has known uses in textiles, foods, papers, body care products, detergents, plastics and building materials. According to the Tribe, hemp is one of the earliest-known domesticated plants, with a long history of cultivation and use around the world, including cultivation by Native American tribes before the arrival of European settlers. President George Washington is said to have heralded the plant, telling a gardener, "Make the most you can of the Indian Hemp seed and sow it everywhere." Thomas J. Ballanco, *The Colorado Hemp Production Act of 1995: Farms and Forests Without Marijuana*, 66 U. COLO. L. REV. 1165, 1165 & n.1 (1995) (citing 1794 note to gardener reprinted in CHRIS CONRAD, HEMP: LIFELINE TO THE FUTURE 305 (1993)).

The Tribe's 2015 ordinance defines industrial hemp as all parts of the genera Cannabis that contain a THC concentration of 0.3 percent or less by weight, and the law creates a licensing procedure under which license applicants must demonstrate they are capable of growing industrial hemp and have adopted methods to ensure its safe production. Compl. ¶¶ 56–59, ECF No. 1. The Tribe entered into an agreement with the College of the Menominee Nation to research the viability of industrial hemp. The Tribe thereafter issued a license to the College, which planted an industrial hemp crop on tribal lands for research purposes. According to the complaint, the Tribe cooperated with the DOJ and DEA to secure the testing of industrial hemp and ensure that THC levels did not exceed 0.3 percent, and agreed to destroy any industrial hemp that tested above this limit, as such hemp would be in violation of tribal law. *Id.* ¶ 72–74.

On October 23, 2015, federal agents entered the Menominee Reservation, and seized and destroyed the Tribe's industrial hemp crop. *Id.* ¶ 75. The complaint states that the raid was conducted despite no known THC test exceeding 0.3 percent. *Id.*[1]

On November 18, 2015, the Tribe filed this action for declaratory relief. The Tribe seeks a declaration from this Court that its cultivation of industrial hemp for agricultural or academic research purposes in conjunction with the College of Menominee Nation is lawful under 7 U.S.C. § 5940. Specifically, the complaint includes three "claims" for declaratory relief corresponding to the statutory requirements for the exception: (1) that in passing a tribal law legalizing the cultivation of industrial hemp on the Menominee Reservation, the Tribe acted as a "State," as required under § 5940; or alternatively (2) that the cannabis laws of the State of Wisconsin have no application to industrial hemp cultivation by the Tribe within the exterior boundaries of the Menominee Reservation, and that the cultivation of industrial hemp on the Menominee Reservation is therefore "allowed" under the laws of the State of Wisconsin, as required under § 5940; and (3) that the College of Menominee Nation is an "institution of higher education" under § 5940. As explained below, the Government responded to the complaint by filing a motion to dismiss on numerous grounds. The Tribe responded with a motion for summary judgment. A hearing on the motions was held on May 13, 2016.

---

[1] The circumstances leading up to the raid, which are not directly relevant to the Tribe's claims for declaratory relief, have not been made a part of the record in this case by either party. The raid was conducted pursuant to a search warrant. An Application & Affidavit for Search Warrant filed in this Court sheds some, if not much, light on the Government's seemingly abrupt decision to raid and destroy the Tribe's hemp crop, rather than to seek injunctive relief. *See* Aff. in Supp. of Search Warrant Application, ¶ 6, Case No. 15-MJ-712-JRS, ECF No. 1.

## LEGAL STANDARD

A motion to dismiss under Rule 12(b)(1) of the Federal Rules of Civil Procedure challenges the court's subject matter jurisdiction. Federal courts are courts of limited jurisdiction and can only hear "Cases" and "Controversies" as authorized by Article III of the Constitution. *Flast v. Cohen*, 392 U.S. 83, 94 (1968). The plaintiff bears the burden of proving that subject matter jurisdiction exists. *Lee v. City of Chicago*, 330 F.3d 456, 468 (7th Cir. 2003) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)).

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The court "construe[s] the complaint in the light most favorable to the plaintiffs, accepting as true all well-pled facts alleged, taking judicial notice of matters within the public record, and drawing all reasonable inferences in the plaintiffs' favor." *Adkins v. VIN Recycling, Inc.*, 644 F.3d 483, 492–93 (7th Cir. 2011).

Finally, summary judgment under Rule 56 is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). In deciding a motion for summary judgment, a court views the facts in the light most favorable to the non-moving party. *Crull v. Sunderman*, 384 F.3d 453, 460 (7th Cir. 2004).

**ANALYSIS**

**I.  Threshold Issues**

The Government raises several threshold issues in its motion to dismiss.  The Government argues the Tribe has failed to identify any applicable "private right of action" authorizing this suit, that the complaint does not allege facts establishing an "actual controversy," and that even if those requirements were met, the Court should simply decline, in the exercise of its discretion, to consider the Tribe's claims.

**A.  Right of Action**

The Tribe filed this suit seeking a judgment declaring its rights under a federal statute, 7 U.S.C. § 5940(a).  In its complaint, the Tribe asserts that this Court has jurisdiction under 28 U.S.C. § 1331, which confers jurisdiction on district courts over actions "arising under" federal law.[2]  The Tribe further asserts that this Court is authorized to grant declaratory relief under the Declaratory Judgement Act, which allows a district court to "declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought," so long as there is "a case of actual controversy within [the court's] jurisdiction."  28 U.S.C. § 2201(a).

The Government's first argument in support of its motion to dismiss for lack of subject matter jurisdiction and for failure to state a claim is that the Tribe has failed to identify any "private right of action."  Specifically, the Government argues the Declaratory Judgment Act "is not an available vehicle" for the Tribe's claims because the Act "does not provide a private right of action,"

---

[2]The complaint also asserts the Court has jurisdiction under 28 U.S.C. § 1346 because the action involves claims against agencies of the United States government.

Case 1:15-cv-01378-WCG   Filed 05/23/16   Page 6 of 19   Document 26

but instead merely "provides an additional remedy where an independent right of action already exists." Government's Br. In Supp. of Mot. to Dismiss 1, ECF No. 16.

In support of its argument, the Government cites *Schilling v. Rogers*, 363 U.S. 666 (1960). In *Schilling*, the Court rejected the petitioner's attempt to circumvent a provision excluding judicial review of his claim under the Trading with the Enemy Act, which authorized return of property acquired by the United States during World War II to German nationals under certain circumstances, by seeking relief under the Declaratory Judgment Act. After rejecting the petitioner's claim under the Administrative Procedure Act because the Trading with the Enemy Act "excludes a judicial remedy in this instance," *id.* at 676, the Court concluded that "petitioner's reliance on the Declaratory Judgments Act ... carries him no further." *Id.* at 677. The availability of relief under the Declaratory Judgment Act, the Court noted, "presupposes the existence of a judicially remediable right. No such right exists here." *Id.*

The Government also cites *McCready v. White* in support of its argument that the Tribe must identify a private right of action. 417 F.3d 700 (7th Cir. 2005). In *McCready*, the plaintiff brought suit under 42 U.S.C. § 1983 to compel State officials to turn over to him information from State motor vehicle records that he claimed was excepted from the protection provided by the Driver's Privacy Protection Act of 1994, 18 U.S.C. §§ 2721–25. That law provides a cause of action in a district court for damages, attorneys' fees and other equitable relief against a person who knowingly obtains, discloses or uses personal information from a motor vehicle record for an improper purpose, by a person to whom the information pertains. § 2724. In affirming the district court's decision dismissing the action, the Seventh Circuit held that while the district court undoubtedly had federal jurisdiction under 28 U.S.C. § 1331 since the case was clearly one "arising under" federal law,

7

dismissal was nevertheless proper because there was no private right of action that authorized McCready's suit. *Id.* at 702–03. The Driver's Privacy Protection Act created a private right of action available to a person to whom improperly released information pertains, but McCready was not such a person.

Likewise in this case, the Government argues that the Tribe's lawsuit must fail. It is not enough, the Government contends, that the dispute is over federal law. The teaching of *Schilling* and *McCready*, in the view of the Government, is that a private right of action must also be identified. Absent a private right of action, it argues, the Tribe's lawsuit must be dismissed.

In this Court's view, the Government is confused. There is a significant difference between an action that seeks to vindicate a putative right federal law does not afford from one that seeks protection from punishment for conduct that federal law expressly allows. *McCready* involved a claim for injunctive relief under 42 U.S.C. § 1983; it did not even involve the Declaratory Judgment Act. And *Schilling* held that an action for declaratory relief, like any action, requires "a judicially remediable right," *id.* at 677, not a private right of action. Indeed, the express language of the Declaratory Judgment Act makes clear that declaratory relief may be granted "whether or not further relief is or could be sought," 28 U.S.C. § 2201; in other words, whether or not there is a private right of action. What is required is an actual case or controversy; not a private right of action.

The petitioner/plaintiff in *Schilling* and *McCready* failed because neither could point to a "judicially remediable right" the law gave them. *Schilling*, 366 U.S. at 677. Here, by contrast, the Tribe claims it is entitled under federal law to grow industrial hemp under the exception to the Controlled Substances Act created by the Agricultural Act of 2014 and seeks a judicial declaration to protect it from further interference and even criminal prosecution by the Government. This is

8

precisely the kind of case the Declaratory Judgment was intended to address. *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 128–29 (2007) ("Our analysis must begin with the recognition that, where threatened action by government is concerned, we do not require a plaintiff to expose himself to liability before bringing suit to challenge the basis for the threat—for example, the constitutionality of a law threatened to be enforced."); *see also Armstrong v. Exceptional Child Center, Inc.*, 135 S. Ct. 1378, 1384 (2015) ("What our cases demonstrate is that, 'in a proper case, relief may be given in a court of equity . . . to prevent an injurious act by a public officer.'") (citing *Carroll v. Safford*, 3 How. 441, 463, (1845)).

The right asserted by the Tribe is judicially remediable. In this kind of action, the test for determining whether the Tribe has a federal cause of action under the Declaratory Judgment Act requires asking "whether a 'coercive action' brought by the declaratory judgment defendant . . . would necessarily present a federal question." *Medtronic, Inc. v. Mirowski Family Ventures, LLC*, 134 S. Ct. 843, 848 (2014) (quoting *Franchise Tax Bd. of Cal. v. Construction Laborers Vacation Trust for S. Cal.*, 463 U.S. 1, 19 (1983)); *see also GNB Battery Technologies, Inc. v. Gould, Inc.*, 65 F.3d 615, 619 (7th Cir. 1995) ("In declaratory judgment cases, the well-pleaded complaint rule dictates that jurisdiction is determined by whether federal question jurisdiction would exist over the presumed suit by the declaratory judgment defendant." (citing *Nuclear Eng'g Co. v. Scott*, 660 F.2d 241, 253 (7th Cir.1981), *cert. denied*, 455 U.S. 993 (1982))).

Here, the Tribe notes that the Government could have brought a "coercive action" against the Tribe seeking an injunction preventing the Tribe from cultivating hemp. 21 U.S.C. § 882(a). The Tribe notes that such an action would of course present the federal question of whether the hemp exception to the Controlled Substances Act applies to the Tribe. That, the Tribe contends, is

the necessary federal question raised by the Tribe's declaratory action. Indeed, the Tribe notes that the Justice Department has in the past brought exactly such a coercive action by seeking and in fact obtaining an injunction against an American Indian hemp farmer from planting industrial hemp prior to the enactment of the law at issue. *United States v. White Plume*, 447 F.3d 1067 (8th Cir. 2006). This action is simply a mirror image of the Government's action in *White Plume*. I conclude that the judicially remediable right presupposed by the Declaratory Judgment Act is present.

**B. Actual Controversy**

An essential limitation on the availability of declaratory relief is the requirement that an "actual controversy" exists between the parties. 28 U.S.C. § 2201(a) ("In a case of <u>actual controversy</u> within its jurisdiction . . . may declare the rights and other legal relations of any interested party seeking such declaration . . ."). This statutory requirement is similar to, indeed, is an explicit reference to, the constitutional limitation on the judicial power to deciding "Cases" and "Controversies." *See* U.S. Const. art. III, § 2; *MedImmune*, 549 U.S. at 126–27 (citing *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 240 (1937)).

"[T]he test to be applied to determine the existence of an actual controversy in the context of a declaratory judgment action is whether . . . there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *GNB Battery Techs., Inc.*, 65 F.3d at 620 (quoting *Nuclear Eng'g Co.*, 660 F.2d at 251–52). Federal courts cannot, whether in a declaratory action or otherwise, issue advisory opinions.

Here, the Government argues the Tribe's allegations in this case are "inadequate to demonstrate a real and immediate possibility of an enforcement action resulting from the

10

Government's allegedly contrary interpretations" of the hemp statute. Government's Br. in Supp. of Mot. to Dismiss at 10. In response, the Tribe characterizes the Government's suggestion that it does not necessarily disagree with the Tribe's "contrary interpretations" of the hemp statute as perplexing, and the Court agrees. There is nothing hypothetical about the controversy at issue in this case; the Tribe enacted an ordinance allowing hemp cultivation and planted a crop, which was raided and destroyed by the Government. Moreover, although the Tribe has not yet actually re-planted a new hemp crop, "where threatened action by government is concerned, [courts] do not require a plaintiff to expose himself to liability before bringing suit to challenge the basis for the threat." *MedImmune*, 549 U.S. at 128–29. For these reasons, the Court finds the "actual controversy" requirement is met and the Court has jurisdiction over the Tribe's declaratory action.

**C. Discretion**

The Government argues that even if the Court has jurisdiction over the Tribe's claims, the Court should nonetheless dismiss the Tribe's claims for prudential reasons. The argument was apparently abandoned when it was not made in the Government's reply brief in support of the motion to dismiss, but re-asserted at oral argument. In any event, the Court will not dismiss for prudential reasons. The Tribe has unequivocally expressed its interest in utilizing the hemp exception to the Controlled Substances Act to explore hemp production as a possible way of seeking economic development. It passed an ordinance authorizing it to establish a research program and expended time, money and effort to implement it. Given the Government's previous destruction of the Tribe's hemp crop and its view that the Tribe may not lawfully grow hemp within the reservation boundaries, a judicial resolution of the dispute would serve both parties. A judgment would serve the useful

11

purpose of clarifying the Tribe's right to grow hemp without forcing it to incur the expense of another substantial investment of the Tribe's scarce resources and risking further harm.

**II.  Merits**

The Tribe's declaratory claims require the Court to interpret a federal statute.  The Supreme Court has long held that "the standard principles of statutory construction do not have their usual force in cases involving Indian law." *Montana v. Blackfeet Tribe of Indians*, 471 U.S. 759, 766 (1985).  Because of the unique trust relationship between the United States and Indians, statutes in cases involving Indian law are construed liberally in favor of Indians, and all ambiguities are resolved in their favor.  *Id.*; *County of Yakima v. Confederated Tribes and Bands of Yakima Indian Nation*, 502 U.S. 251, 269 (1992) ("When we are faced with these two possible constructions, our choice between them must be dictated by a principle deeply rooted in this Court's Indian jurisprudence: '[S]tatutes are to be construed liberally in favor of the Indians, with ambiguous provisions interpreted to their benefit.'" (quoting *Blackfeet Tribe*, 471 U.S. at 766)).  Moreover, tribal sovereignty is preserved unless Congress's intent to the contrary is clear.  COHEN'S HANDBOOK OF FEDERAL INDIAN LAW 113–14 (Nell Jessup Newton ed., 2012); *White Mountain Apache Tribe v. Bracker*, 448 U.S. 136, 143–44 (1980) ("Ambiguities in federal law have been construed generously in order to comport with . . . traditional notions of sovereignty and with the federal policy of encouraging tribal independence"); *Reich v. Great Lakes Indian Fish and Wildlife Com'n*, 4 F.3d 490, 496 (7th Cir. 1993) (noting duty to make "federal law bear as lightly on Indian tribal prerogatives as the leeways of statutory interpretation allow").

On the other hand, when a statute is not ambiguous, the foregoing canons do not come into play, and the statute must be given its plain meaning.  *South Carolina v. Catawba Indian Tribe, Inc.*,

12

476 U.S. 498, 506 (1986) ("The canon of construction regarding the resolution of ambiguities in favor of Indians, however, does not permit reliance on ambiguities that do not exist; nor does it permit disregard of the clearly expressed intent of Congress.").

**A. "State"**

As noted above, the law at issue permits the growing or cultivation of industrial hemp by an institution of higher education if such growing/cultivation is conducted for research purposes and "allowed under the laws of the State" in which it occurs. 7 U.S.C. § 5940(a).

The Tribe's first argument is that "State" includes Indian tribes, and that the Tribe thus acted as a "State" for purposes of the statute when it enacted a tribal law allowing hemp cultivation. The Tribe's position has some logical and grammatical support. The word "State" is commonly understood to mean peoples politically organized as sovereigns, *e.g.*, MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY, 1148 (10th ed. 1999) ("5 a : a politically organized body of people usu. occupying a definite territory; *esp* : one that is sovereign"), and Indian tribes are considered sovereigns under federal law. *Michigan v. Bay Mills Indian Community*, --- U.S. --- , 134 S. Ct. 2024, 2030 (2014) ("Indian tribes are domestic dependent nations that exercise inherent sovereign authority. As dependents, the tribes are subject to plenary control by Congress. And yet they remain separate sovereigns pre-existing the Constitution. Thus, unless and until Congress acts, the tribes retain their historic sovereign authority." (internal citations and quotations omitted)). Moreover, the Supreme Court made clear last term that the word "State" does not necessarily mean one of the 50 states, even when it is defined as such. *See King v. Burwell*, --- U.S. --- , 135 S. Ct. 2480 (2015).

On the other hand, in the ordinary case it remains true that Congress's use of the word "State" in a federal law without further definition simply means one of the 50 states. Congress

13

regularly defines "State" to include Indian tribes or otherwise specifies that Indian tribes are included in addition to states and other entities to which a statute applies. *See* 28 U.S.C. § 1738(B) (defining "state" as "a state of the United States, the District of Columbia, the Commonwealth of Puerto Rico, the territories and possessions of the United States, and Indian country (as defined in section 1151 of title 18)"); 18 U.S.C. § 2265(a) (applying full faith and credit requirements to the courts of any "State, Indian tribe, or territory"). This indicates that Congress can and will include tribes when that is the intent.

The Tribe argues that the Agricultural Act of 2014 in which the hemp statute was included contains several definitions of "State" that encompass "any other territory or possession of the United States," 7 U.S.C. §§ 2132(d), 7202(14), 8751(8), language which courts have construed as broad enough to include Indian tribes. *E.g.*, *In re Larch*, 872 F.2d 66, 68 (4th Cir. 1989). Drawing on these provisions, the Tribe argues that State, as used in the law, includes Indian tribes. The hemp statute, however, is a stand-alone provision specifically designated as "miscellaneous." Pub. L. No. 113-79, Subtitle F–Miscellaneous Provisions, § 7606, 128 Stat. at 655–56, codified at Title 7 of the United States Code, Chapter 88—Research, Subchapter VII—Miscellaneous Research Provisions. The hemp statute is not a part of any broader statutory scheme. Moreover, the hemp statute contains its own definitional subsection. 7 U.S.C. § 5940(b). Under these circumstances, it would be arbitrary to look to definitions in unrelated parts of the same title of the United States Code and apply such definitions to the statute at issue. For these reasons, the Court denies the Tribe's request for declaratory relief to the effect that "State" as used in the hemp statute includes Indian tribes, and rejects the Tribe's theory that it acted as a "State" when it enacted its own law allowing hemp cultivation.

14

**B. "Allowed"**

At oral argument, the Tribe focused on its second, narrower, argument. The Tribe argues that the cannabis laws of the State of Wisconsin have no application to industrial hemp cultivation by the Tribe within the exterior boundaries of the Menominee Reservation, and that the cultivation of industrial hemp on the Menominee Reservation therefore is "allowed" under the laws of the State of Wisconsin.

The Government does not dispute the Tribe's contention that the cannabis laws of the State of Wisconsin have no application, by their own force, on the Reservation. By way of background, the Tribe was granted a reservation in Wisconsin by the Treaty of the Wolf River in 1854. 10 Stat. 1064. In 1953, the Congress enacted Public Law 280, 67 Stat. 588, which, as amended, became 18 U.S.C. §1162. Public Law 280 gave certain states, including Wisconsin, jurisdiction over crimes committed by or against Indians in Indian country within each state. The law excluded the Menominee Indian Reservation from the grant of jurisdiction to Wisconsin. On June 17, 1954, Congress enacted the Menominee Termination Act, Pub. L. No. 399, 68 Stat. 250, the purpose of which was "to provide for orderly termination of Federal supervision over the property and members of the Menominee Indian Tribe of Wisconsin." 68 Stat. at 250. Additionally, on August 24, 1954, Congress amended 18 U.S.C. §1162 to strike the Menominee exception, thereby subjecting the Menominee Indian Reservation to the state's criminal jurisdiction as provided by 18 U.S.C. §1162(a). As a result of these legislative actions, the Tribe became subject to the state's criminal and civil jurisdiction, and the area known as the Menominee Indian Reservation became Menominee County, Wisconsin's 72nd County.

On December 22, 1973, however, Congress repealed the Termination Act by enacting the Menominee Restoration Act, Pub. L. No. 93-197, 87 Stat. 770. This legislation restored federal recognition status for the Tribe and returned tribal property to federal trusteeship. Effective March 1, 1976, the State of Wisconsin then "retroceded" state jurisdiction over the Menominee Indian Reservation by executive proclamation. Although Public Law 280 made no provision for states to retrocede or return jurisdiction to the United States, Congress amended Public Law 280 in 1968 in response to Indian dissatisfaction with state jurisdiction and states' unhappiness over the financial burdens of law enforcement in Indian country. COHEN'S HANDBOOK OF FEDERAL INDIAN LAW 575–76 (Nell Jessup Newton ed., 2012). The 1968 Amendments authorized the United States to accept any State's "retrocession" of "all or any measure of the criminal or civil jurisdiction, or both, acquired by such State pursuant to the provisions of" Public Law 280. Pub. L. No. 90-283, Title IV, § 403, 82 Stat 79 (codified at 25 U.S.C. §1323). By proclamation issued on February 19, 1976, the Governor of Wisconsin did in fact offer to retrocede to the United States all civil and criminal jurisdiction acquired by the State of Wisconsin under the 1954 amendments to Public Law 280, and pursuant to the authority vested in him by the President, the United States Secretary of the Interior accepted the offer effective March 1, 1976. 41 Fed. Reg. 8516-02 (1976).

As a result of this history, today the boundaries of Menominee County are generally coterminous with the boundaries of the Menominee Indian Reservation, and because the United States accepted Wisconsin's retrocession of jurisdiction over the Menominee Reservation, the Tribe is correct that it is not subject to the jurisdiction or laws of the State of Wisconsin, including those

16

that prohibit cannabis cultivation.[3] Based on this history, the Tribe contends that Wisconsin law "allows" it to grow hemp on its reservation.

But the exception to the Controlled Substances Act's prohibition of hemp cultivation applies only if the laws of the State in which the hemp is grown allow the growing and cultivation of hemp, not whether those laws are enforceable on the Tribe's reservation. Congress has chosen to condition the hemp exception to the Controlled Substances Act on the laws of the States in which the proposed growing operations would occur. Wisconsin's laws do not allow the growing and cultivation of hemp. It thus follows that the exception does not apply.

In this respect, as the Government notes, the Industrial Hemp Research Statute is similar to the Indian Gaming Regulatory Act (IGRA), Pub. L. No. 100-497, 102 Stat. 2467 (1988). The IGRA defines card games that qualify as "class II gaming" by reference to whether such card games are authorized or prohibited by "the laws of the State," 25 U.S.C. § 2703(7)(A)(ii), and conditions a tribe's ability to conduct "class III gaming activities" on Indian lands on whether the activities will be "located in a State that permits such gaming," *id.* § 2710(d)(1)(B), and "conducted in conformance with a Tribal-State compact entered into by the Indian tribe and the State," *id.* § 2710(d)(1)(C). Thus, it is not unusual for Congress to incorporate state law as the standard for conduct allowed on Indian lands, even where state law is not otherwise applicable.

In *United States v. Menominee Tribe*, 694 F. Supp. 1373 (E.D. Wis. 1988), the Tribe made essentially the same argument it offers here in an effort to avoid State law limitations on gaming. In that case the Tribal Legislature passed an ordinance giving the Tribe the sole authority to engage

---

[3]Today, the Menominee is the only Indian tribe in the State of Wisconsin not subject to the State's jurisdiction under Public Law 280.

17

in gaming, and shortly thereafter, the Tribe opened a casino which included games like roulette and blackjack. The government filed suit seeking a declaratory judgment that the casino operated by the Tribe was in violation of the Organized Crime Control Act (OCCA), 18 U.S.C. § 1955, and an injunction seeking to enjoin the Tribe from continuing to operate its commercial gambling business. 694 F. Supp. at 1374. The Tribe sought dismissal of the government's suit on the ground that because Wisconsin had retroceded jurisdiction over the Menominee Reservation, the OCCA, which incorporated state law, did not apply to it. In rejecting the Tribe's argument, the Court explained:

> When section 1955 was enacted, Congress recognized the need to take into account the various state systems concerned with commercial gambling. It recognized that gambling activities that are legal in one state are illegal in others. This incorporation of state law into federal law has been utilized by Congress in other areas, and courts have applied these statutes to Indian reservations. *See Rice v. Rehner*, 463 U.S. 713, 103 S.Ct. 3291, 77 L.Ed.2d 961 (1983) (liquor licensing); *United States v. Sohappy*, 770 F.2d 816 (9th Cir.1985), *cert. denied*, 477 U.S. 906, 106 S.Ct. 3278, 91 L.Ed.2d 568 (1986) (preservation of fish and wildlife).

694 F. Supp. at 1375.

The same is true here. In enacting the Industrial Hemp Research Statute, Congress recognized the need to take into account that while some states prohibited the growing and cultivation of hemp, other states allowed it. It therefore conditioned the availability of the exception the statute created in the Controlled Substances Act on the law of the state in which the growing would occur. Wisconsin law does not allow the growing of hemp. While Wisconsin law is not enforceable on the Menominee Reservation, that does not change the fact that the growing or cultivating of industrial hemp is not allowed under the laws of the State of Wisconsin. Because the Tribe is located in the State of Wisconsin, the hemp exception to the Controlled Substances Act does not apply to the Tribe. And having concluded that the exception does not apply in any event, it is

18

not necessary to address the issue of whether the College of Menominee Nation is an "institution of higher education" under § 5940.

## CONCLUSION

For all of these reasons, the Government's motion to dismiss is **GRANTED**, and the Tribe's motion for summary judgment is **DENIED**. The Clerk of Court is directed to enter judgment dismissing the action and terminating the case forthwith.

**SO ORDERED** this  23rd  day of May, 2016.

s/ William C. Griesbach
William C. Griesbach, Chief Judge
United States District Court
